UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

VALERIE D.,[1]

        Plaintiff,

  v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

        Defendant.

Case No. 3:17-cv-01774-YY

OPINION AND ORDER

YOU, Magistrate Judge:

    Valerie D. ("plaintiff"), seeks judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying her application for Title II Disability Insurance Benefits ("DIB") under the Social Security Act ("Act"). This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Because the Commissioner's decision is not supported by substantial evidence, it is REVERSED and REMANDED for the immediate payment of benefits.

///

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member(s).

1 – OPINION AND ORDER

# BACKGROUND

Born in October 1952, plaintiff was 60 years old on the alleged onset date. Tr. 87. She has master's degrees in both finance and taxation. Tr. 52-53. Plaintiff has past relevant work experience as an accountant and a controller. Tr. 31.

Plaintiff has been diagnosed with fibromyalgia, arthritis, migraines, severe fatigue, chronic pain, celiac disease, bursitis, hypoglycemia, gastro-esophageal reflux disease, asthma, IBS, alopecia, depression, ADHD, and anxiety. Tr. 319, 391, 394, 417, 444, 484, 522, 525.

Plaintiff's depression and anxiety were treated with therapy and an ever-changing cocktail of medications, including Klonopin, Lexapro, Pristiq, Topamax, Paxil, Effexor, Zoloft, and Wellbutrin. Tr. 384, 440, 444, 535, 542. Notwithstanding treatment, plaintiff struggled with stress and would often become overwhelmed. Tr. 165, 305, 551, 599. Plaintiff suffers from alopecia, which resulted in a complete loss of all hair on her body. Tr. 414, 441. Dr. Puziss concluded that the alopecia was probably caused by stress. Tr. 542. Dr. Parent determined plaintiff was not capable of even a low-stress job. Tr. 165. Plaintiff explained that she structures her life to avoid as much stress as possible, mostly by avoiding social interaction. Tr. 305.

Plaintiff consistently reported pain and fatigue to her treating providers. Tr. 448, 465, 468-69, 479, 495, 502, 518, 521, 537, 545, 550, 552, 564, 591, 595, 597, 603. Plaintiff's fatigue inhibited her ability to perform daily activities. She explained that she usually gives up on household chores because she runs out of energy, and she sometimes goes to bed hungry because she does not have the energy to prepare food. Tr. 298, 300. Dr. Parent opined that plaintiff's fatigue was caused by fibromyalgia. Tr. 521. Beginning in 2011, plaintiff began arriving later and later to her job due to the fibromyalgia-related fatigue. Tr. 54, 311. By the time she stopped working completely, plaintiff had been reduced to working only 10 hours per week. Tr. 54.

## PROCEDURAL HISTORY

Plaintiff filed an application for DIB on November 22, 2013, alleging disability beginning August 23, 2013. Tr. 21. Plaintiff's claim was initially denied on May 16, 2014, and upon reconsideration on September 4, 2014. *Id.* On March 21, 2016, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 38-76. On September 6, 2016, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 21-32. After the Appeals Council denied her request for review, plaintiff filed a complaint in this court. Tr. 1-7. The ALJ's decision is therefore the Commissioner's final decision subject to review by this court. 20 C.F.R. § 422.210.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). The reviewing court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

# SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. This sequential analysis is set forth in the Social Security regulations, 20 C.F.R. §§ 404.1520, 416.920, in Ninth Circuit case law, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)), and in the ALJ's decision in this case, Tr. 22-23.

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity after the alleged onset date. Tr. 23.

At step two, the ALJ found that plaintiff has the following severe impairments: obesity and fibromyalgia. *Id.*

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 27. The ALJ next assessed plaintiff's residual functional capacity ("RFC") and determined that she could perform light work with the following limitations: she cannot climb ladders, ropes or scaffolds; she can frequently climb ramps and stairs; she can frequently stoop, kneel, crouch and crawl; and she should avoid exposure to hazards, dusts, odors, fumes, and gasses. Tr. 28.

At step four, the ALJ found plaintiff could perform her past relevant work as an accountant or controller. Tr. 31. By finding plaintiff was able to do past relevant work, the ALJ determined plaintiff was not disabled; therefore, the ALJ did not proceed to step five. 20 C.F.R. §§ 404.1520(a)(4); 404.1520(f).

**DISCUSSION**

Plaintiff argues that the ALJ: (1) improperly discounted her subjective symptom testimony; (2) erroneously assessed the medical opinion of Dr. Parent; (3) and incorrectly determined that plaintiff's depression and anxiety were not severe.

**I.      Subjective Symptom Testimony**

Plaintiff alleges that the ALJ erroneously discounted her subjective symptom testimony. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

At the hearing, plaintiff testified that due to fatigue and stress she began working fewer and fewer hours until she could no longer work at all. Tr. 54. She explained that on some mornings she lies in bed for a couple of hours trying to summon the energy to get up. Tr. 70. Sometimes she goes back to bed shortly after getting up because she is in so much pain. Tr. 71. She testified that some nights she goes to bed hungry because she does not have the energy to

cook. Tr. 68-69. Plaintiff reported that even when she does cook, she usually makes packaged, canned, or frozen foods. Tr. 299. She usually just eats crackers and nuts for breakfast and lunch. *Id.* Plaintiff conveyed that she often has food rotting in her refrigerator day after day because she never has the energy to prepare it. Tr. 298.

Plaintiff testified that she struggles to do laundry and has a hard time keeping her kitchen clean. Tr. 65. She explained that she only does the dishes once per week. Tr. 69. She also reported that when she does laundry she often leaves the clean clothes on the couch for up to a month before she gets to folding them. Tr. 300. Plaintiff recounted that vacuuming is painful and she only manages to do it every three to four weeks. Tr. 69. She explained that she vacuums one room but then gets tired and leaves the vacuum there for weeks before attempting to vacuum the next room. Tr. 301. She hires people to clean her house when she has the money because she cannot stay on top of it herself. Tr. 70. Plaintiff noted that she is only able to spend 30 minutes to an hour on housework each day. Tr. 298. Even when she does manage to get the house clean, it leaves her so exhausted for the next few days that it gets dirty again and she cannot keep up. Tr. 301.

Plaintiff testified that she showers once per week. Tr. 67. She also reported that she sometimes wears the same clothes day and night, two to five days in a row, though she will change if she goes out. Tr. 299. Plaintiff noted that she does not leave home very often and described her existence as pretty isolated and solitary. Tr. 302-03. She reported that she structures her life to avoid as much stress as possible, mostly by avoiding social interaction. Tr. 305. Plaintiff further explained that she can function in the quiet solitude of her little house, but if she tries to do anything beyond that, she starts to fall apart. Tr. 58-59.

### A. Conservative Treatment

The ALJ found that plaintiff "had fairly routine and conservative treatment for her fibromyalgia[.]" Tr. 29. The ALJ also noted that plaintiff "rarely, if ever" complained of extreme limitations in activities such as lifting, carrying, sitting, standing, or walking. *Id.*

While plaintiff may not have discussed those specific limitations, she regularly reported fibromyalgia pain and joint pain. Tr. 395-97, 452, 455, 518-19, 521, 525, 545-56, 597, 603. Moreover, plaintiff's fibromyalgia caused fatigue, and plaintiff often reported fatigue that limited her ability to persist in exertional activities. Tr. 387, 424, 448, 468, 479, 495, 521, 561, 573, 591, 595.

The ALJ noted that plaintiff had not been prescribed pain medication from January through June of 2014 or at any point after 2014. Tr. 29. However, although plaintiff did not see a doctor for pain management between January and June 2014, she continued to take her pain medications, including Vicodin. Tr. 447. Further, plaintiff continued to take Vicodin in 2015 and 2016, in addition to Gabapentin, Tramadol, Neurontin, and Hydrocodone, as well as Voltaran gel. Tr. 384, 518-19, 521, 537, 542.

The ALJ also relied on the fact that plaintiff sought treatment with her primary care provider rather than a pain management specialist. Tr. 29. Although plaintiff's psychiatry clinic referred her to a pain management clinic, plaintiff opted to pursue fibromyalgia treatment through her primary care provider. Tr. 451-53. That plaintiff chose to seek treatment from her primary care provider rather than a pain management clinic is not a clear-and-convincing reason to discredit her symptom testimony; the most important fact is that she sought treatment for her pain. In fact, plaintiff made numerous efforts to manage her pain, including physical therapy, massage therapy, acupuncture, yoga, exercise programs, muscle relaxers, topical remedies such

as Voltaran gel, and a variety of strong pain medications including Gabapentin, Tramadol, Neurontin, Hydrocodone, Topamax, Vicodin, and Lyrica. Tr. 314, 384, 452, 455, 518-19, 521, 537, 542. Thus, contrary to the ALJ's conclusion, plaintiff's treatment was not conservative. *See Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017) (the use of a variety of strong pain medications, in conjunction with other forms of treatment, indicates that fibromyalgia treatment is not conservative).

### B. Looking for Work

The ALJ discredited plaintiff for "looking into going back to work and exploring freelance opportunities within the field of her previous occupations." Tr. 30. However, the mere fact that plaintiff attempted to find a job is insufficient to discredit her. *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005) ("That [the claimant] sought employment suggests no more than that he was doing his utmost, in spite of his health, to support himself."). The record reflects that plaintiff consistently struggled financially and had difficulty affording basic needs. Tr. 48, 68, 298, 593, 595, 597. Thus, as in *Webb*, plaintiff was merely doing her best to support herself. Plaintiff's attempt to find employment is not a clear-and-convincing reason to discount her credibility.

Moreover, although plaintiff expressed an interest in exploring such freelance opportunities, she did not succeed in renewing her CPA license. Tr. 603. Plaintiff was unable to focus, and therefore was unable to study for the exam. *Id.* Additionally, plaintiff's therapist suggested that plaintiff could go to Worksource to see if there were "any part time jobs she could handle," thus indicating that plaintiff was incapable of returning to work full time. Tr. 595.

The Commissioner argues that plaintiff's testimony that she had not made any attempts to find work after November 2013 was contradicted by the fact she was "exploring freelance work

opportunities" and made "preliminary contact with Worksource Oregon to inquire about job search help." Defendant's Brief ECF #15, 10. However, the ALJ did not rely on the alleged inconsistency of plaintiff's statements; therefore, the Commissioner's argument is an impermissible post hoc rationalization. *Bray v. Commissioner*, 554 F.3d 1219, 1225 (9th Cir. 2009). Moreover, despite the fact that plaintiff was looking into the possibility of freelance or part time work, the record does not reflect that plaintiff took any concrete steps to find employment, other than her failed attempt to renew her CPA license. Because there is no evidence that plaintiff applied for any jobs or solicited any clients for possible freelance work, her assertion that she did not attempt to find work after November 2013 is not contradicted by the record. As such, the purportedly inconsistent statements are not a clear-and-convincing reason for discounting plaintiff's testimony.

### C. Activities of Daily Living

The ALJ found that plaintiff's "activities of daily living [were] generally inconsistent with the extent of her alleged symptoms and allegations." Tr. 29. The ALJ cited plaintiff's ability to do yard work, garden, clean her kitchen, perform household projects, go to the zoo with a friend, and babysit her grandchild. Tr. 29-30. The ALJ, however, failed to explain which testimony was contradicted by such activities. To discredit subjective symptom testimony, the ALJ "must state specifically what symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284 (citing *Dodrill*, 12 F.3d at 918).

Moreover, the record reflects that plaintiff's activities were minimal. With regard to gardening, plaintiff had a small garden in which she planted vegetables in containers and never bothered to harvest them. Tr. 301, 388. Plaintiff struggled to mow her lawn and did it as seldom as possible. Tr. 69-70, 301. She paid people to mow the lawn for her when she had the money.

9 – OPINION AND ORDER

*Id.* Cleaning her house was a struggle, and her daughter sometimes paid a housekeeper to clean it. Tr. 553. Even when she did manage to get the house clean, it left her so exhausted for the next few days that it became dirty again and she could not keep up. Tr. 301. Notably, plaintiff only attempted to clean the kitchen on good days and only washed dishes once a week. Tr. 69, 551. Although plaintiff did some cooking, she generally ate canned and prepared foods, and sometimes went to bed hungry because she did not have the energy to cook. Tr. 67-69, 300. At one point, plaintiff had to pack up her belongings in preparation for moving out of her house, but the record reflects that she needed help to do it. Tr. 579. Plaintiff's babysitting was limited to watching her grandson once or twice per week for two to three hours. Tr. 46-47. The child's parents subsequently put him in daycare, which is some indication that plaintiff was not up to the task of taking care of him. Tr. 47, 519.

Additionally, the fact that plaintiff was able to go to the zoo on one occasion is insufficient to discredit plaintiff's reported fibromyalgia pain. Fibromyalgia must be considered on a "longitudinal record," because the symptoms "can wax and wane." SSR 12-2p; *see Garrison*, 759 F.3d at 1017 (citing *Holohan v. Massanari*, 246 F. 3d 1195, 1205 (9th Cir. 2001)). Furthermore, the mere fact that a claimant can carry out minimal activities, or that a claimant attempts to lead a normal life, does not mean they are foreclosed from disability benefits. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (holding a "claimant need not vegetate in a dark room in order to be eligible for benefits") (citation omitted).

The ALJ also noted that plaintiff once tried to climb a fence when she was locked out of her home, and fell and injured her foot. Tr. 29. Plaintiff in fact broke her foot during that fall. Tr. 540, 542. The fact that plaintiff unsuccessfully attempted to climb a fence, fell, and suffered

a broken foot is not indicative that plaintiff is less limited than she alleges; rather, it serves as further indication that plaintiff is physically limited. The ALJ additionally cited the fact that, after plaintiff broke her foot, a doctor gave her permission to go to the beach but instructed her to walk on flat sand and not bumpy sand. Tr. 29 (citing Tr. 540). The ability to walk on flat sand does little to demonstrate that plaintiff is not as limited as she alleged. Moreover, the record reflects only that plaintiff wanted to go to the beach, not that she went to the beach or was successfully able to walk on the beach. Tr. 540.

The Commissioner argues that plaintiff's ability to take a ten-day trip to Texas indicates she was capable of performing sedentary work. However, the fact that a claimant traveled on a multi-day trip—without further evidence regarding the frequency and duration of rests stops, the amount of time spent in transit, or the position in which the person traveled—is insufficient to demonstrate that the claimant can perform sedentary work. *See Tackett*, 180 F.3d at 1103. Notably, plaintiff reported that she could not remember when she took the trip to Texas; thus, it is unclear from the record whether the trip took place during the relevant period. Tr. 52. Furthermore, the Commissioner's contention is *post hoc*; therefore, the court may not consider it in affirming an adverse decision. *Bray*, 554 F.3d at 1225.

For all of these reasons, plaintiff's activities of daily living do not constitute a clear-and-convincing reason for discounting her subjective symptom testimony.

## II. Medical Opinion Evidence

Plaintiff argues that the ALJ improperly assessed the medical opinion of Dr. Parent. The ALJ is responsible for resolving ambiguities and conflicts in the medical testimony. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ must provide clear-and-convincing reasons for rejecting the uncontradicted medical opinion of a treating or examining physician, or

specific and legitimate reasons for rejecting contradicted opinions, so long as they are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). However, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). Additionally, the ALJ may discount physicians' opinions based on internal inconsistencies, inconsistencies between their opinions and other evidence in the record, or other factors the ALJ deems material to resolving ambiguities. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999).

The ALJ gave "little weight" to Dr. Parent's opinion because it was "inconsistent with the evidence of record, including his own treatment notes and the course of treatment for the claimant's impairments." Tr. 30. However, Dr. Parent's opinion indeed was supported by his own treatment notes as well as the treatment notes of plaintiff's other providers. Dr. Parent first diagnosed plaintiff with fibromyalgia in 2004, and his opinion was based on "observations of her progressive developing problems" over 13 years. Tr. 387, 444. Plaintiff frequently reported pain, body aches, and fatigue. Tr. 391, 395, 397, 405, 419, 424, 433, 448-49, 468-69, 479, 495, 518, 545, 550, 595, 597, 603. During physical examinations of plaintiff, Dr. Parent noted fibromyalgia pressure points. Tr. 519, 521.

The ALJ additionally found that neither Dr. Parent's own treatment notes nor the other evidence of record showed significant or persistent objective signs that supported the extent of Dr. Parent's opined limitations. Tr. 30. The Ninth Circuit has made clear that diagnosing fibromyalgia "does not rely on X-rays or MRIs." *Revels*, 874 F.3d at 657. Fibromyalgia "is diagnosed entirely on the basis of patients reports of pain and other symptoms," and there "are no laboratory tests to confirm the diagnosis." *Id.* at 663 (citing *Benecke v. Barnhart*, 379 F.3d

587, 590 (9th Cir. 2004)) (quotations omitted). In evaluating whether a claimant's residual functional capacity renders them disabled because of fibromyalgia, the medical evidence must be construed in light of fibromyalgia's unique symptoms and diagnostic methods, as described in SSR 12-2p and *Benecke*. *Id.* at 662.

Under SSR 12-2p, there are a number of symptoms that are considered to be clinical "signs," including muscle pain, fatigue or tiredness, muscle weakness, headache, IBS, numbness, waking unrefreshed, or depression. SSR 12-2p. Here, the record is replete with clinical signs of plaintiff's fibromyalgia. Tr. 318, 391, 395, 397, 405, 419, 424, 433, 436, 440, 445, 448, 451, 455, 468-69, 479, 495, 518, 521, 524, 542, 545, 550, 573, 591, 595, 597, 603.

The ALJ found that plaintiff's activities of daily living, including gardening, yard work, housework, and household maintenance were inconsistent with Dr. Parent's opinion that plaintiff would need additional breaks or absences from work due to her impairments. Tr. 30. However, as discussed above, plaintiff's activities of daily living were quite limited, and nothing in the record indicates that plaintiff could sustain such activities for eight hours per day, five days per week. In fact, the record reflects that plaintiff could only perform such activities sporadically and for short periods of time. Tr. 298, 301, 424, 551, 553, 603.

The ALJ also asserted that plaintiff's routine and conservative treatment was inconsistent with Dr. Parent's findings. Tr. 30. However, as noted previously, the ALJ merely asserted that plaintiff's treatment was conservative without providing any further explanation, which is not a sufficient basis for rejecting a treating physician's opinion. *See Revels*, 874 F.3d at 667. Moreover, the record reflects that plaintiff was consistently treated with nerve medications, muscle relaxers, and pain medications, including opioids and narcotics. Tr. 452, 519-20, 524. Plaintiff also attempted physical therapy, massage therapy, acupuncture, yoga, exercise

programs, and topical remedies such as Voltaran gel. Tr. 314, 384. Nothing in the record suggests that a more aggressive form of treatment, such as surgery, would have been an appropriate course of treatment. *See Bair v. Comm'r of Soc. Sec. Admin.*, No. 3:17-cv-00622, 2018 WL 2120274, at *5 (D. Or. May 8, 2018).

The ALJ found that Dr. Parent's conclusion that plaintiff would have difficulty with handling and fingering was not supported by the record. Tr. 30. The ALJ noted that plaintiff had not made significant reports of hand or finger pain to any of her healthcare providers. *Id.* Because the medical record contains almost no mention of hand or finger pain, the ALJ's finding in this regard is supported by substantial evidence, and Dr. Parent's handling and fingering limitations were properly rejected.

The Commissioner argues that the ALJ properly rejected Dr. Parent's opinion because plaintiff had been seeing another doctor for several years and when Dr. Parent filled out the function report, he had only seen plaintiff three times since re-establishing care in 2014. However, the ALJ did not rely on this argument in her opinion. Thus, the Commissioner's contention is *post hoc*, and this court may not consider it in affirming an adverse decision. *Bray*, 554 F.3d at 1225.

In sum, except for the handling and fingering limitations that were properly rejected, the ALJ erred in rejecting Dr. Parent's opinion.

### III. Severe Impairments

Plaintiff argues the ALJ erred in finding that her depression and anxiety were not "severe" impairments at step two of the sequential analysis. At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987); 20 C.F.R. § 404.1520(c). "An

impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen*, 80 F.3d at 1290 (quoting SSR 85-28).

The ALJ found that plaintiff's depression and anxiety were not severe. Tr. 25. The ALJ explained that plaintiff's reports of "mental difficulties with activities of daily living" were inconsistent with her ability to babysit her grandchild twice per week, and perform yardwork, housework, and gardening. Tr. 25. However, as discussed above, plaintiff's activities were minimal. Despite enjoying the opportunity to babysit her grandson, she was limited to watching him for short periods of time, and there was some indication that plaintiff was not up to the task of taking care of him. Tr. 46-47, 519. Although plaintiff planted vegetables in her small garden, she never bothered to harvest them. Tr. 52, 301. Additionally, plaintiff became overwhelmed by routine household chores and often left them half finished. Tr. 298, 300-01, 551, 599.

The ALJ additionally cited the fact that plaintiff at one point became better friends with a neighbor, she visited the zoo with a friend on one occasion, and she enjoyed spending Christmas with family in 2015. Tr. 26. An ALJ may not cherry-pick isolated instances of marginal improvement to show that plaintiff's impairments were not severe. *See Garrison*, 759 F.3d at 1017 (citing *Holohan*, 246 F. 3d at 1205) ("Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.").

The ALJ further noted that plaintiff "did not report significant mental difficulty with leaving her home alone or shopping in stores." Tr. 26. To the contrary, plaintiff reported that she does not leave home very often, and that she is pretty isolated and solitary. Tr. 302-03. She

explained that she structures her life to avoid as much stress as possible, mostly by avoiding social interaction. Tr. 305. Plaintiff further explained that she can function at home, but if she tries to do anything beyond that, she starts to fall apart. Tr. 58-59. Moreover, the record reflects that she only goes shopping once every two to three weeks. Tr. 300.

The ALJ also found that although plaintiff claimed she neglected her hygiene and grooming, "the evidence does not show any significant or persistent observations of the claimant appearing disheveled, or otherwise having deficits in hygiene, grooming, or dress." Tr. 25. The ALJ failed to acknowledge that due to plaintiff's alopecia, she had no hair and no body odor. Tr. 314, 414, 441. Thus, it would be difficult for an observer to detect whether plaintiff had deficits in grooming. Moreover, although plaintiff sometimes wears the same clothes for 2-5 days, she puts on clean clothes when she leaves the house. Tr. 299. Accordingly, the fact that her doctors did not make note of plaintiff's poor hygiene is not necessarily inconsistent with plaintiff's description of her grooming and hygiene when she was home.

Even assuming *arguendo* that plaintiff did not neglect her hygiene and grooming, that by itself would be insufficient to demonstrate that plaintiff's depression and anxiety were not severe. Although plaintiff's providers did not note deficits in grooming and hygiene, they frequently observed that plaintiff presented with a tearful, anxious, and depressed mood or affect. Tr. 441, 445, 457, 465, 580, 582, 584, 586, 588, 590, 592, 594, 596, 598, 600, 602. Because of her mental health issues, plaintiff avoids social interaction and struggles to leave her home. Tr. 58-59, 302-03, 305. She becomes overwhelmed by routine household chores. Tr. 551, 559. She has difficulty concentrating, and was unable to renew her CPA license because she could not concentrate on the study materials. Tr. 164, 452, 603. Her insight and judgment are noted to be fair or poor. Tr. 452, 457. Plaintiff's anxiety has physical manifestations—Dr. Puziss concluded

that plaintiff's alopecia was "probably due to stress." Tr. 542. Contrary to the ALJ's assertion that plaintiff could perform her previous occupation of an accountant, plaintiff failed to file even her own taxes in a timely manner. Tr. 589. In her last job, plaintiff began working fewer and fewer hours, until she stopped working completely, and the record reflects that this was, at least in part, due to her mental impairments. Tr. 54, 312, 419. Plaintiff's depression and anxiety are more than just slight abnormalities with "no more than a minimal effect" on her ability to work. *Smolen*, 80 F.3d at 1290 (internal quotations omitted). Accordingly, the ALJ erred in determining that plaintiff's depression and anxiety were not severe.

The Commissioner argues that any error was harmless because plaintiff's mental impairments predate her cessation from working. The Commissioner's assertion is unavailing for two reasons. First, the record reflects that plaintiff's mental impairments were partially responsible for the gradual decline in the number of hours that plaintiff was able to work on a weekly basis. Tr. 54, 312, 419. Furthermore, it is well established that "the step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290 (citing *Bowen*, 482 U.S. at 153–54). For an impairment to be severe, it need only have more than a minimal effect on an individual's ability to work. *Id.* (quoting SSR 85-28). As explained above, plaintiff's depression and anxiety had more than a minimal effect on her ability to work.

## IV. Remand

When a court determines the Commissioner erred in some respect in making a decision to deny benefits, the court may affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for a rehearing." *Treichler v. Commissioner*, 775 F.3d 1090, 1099 (9th Cir. 2014) (quoting 42 U.S.C. § 405(g)). In determining whether to remand for further proceedings or immediate payment of benefits, the Ninth Circuit employs the "credit-as-true"

standard when the following requisites are met: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, (2) the record has been fully developed and further proceedings would serve no useful purpose, and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the plaintiff disabled on remand. *Garrison*, 759 F.3d at 1020. Even if all of the requisites are met, however, the court may still remand for further proceedings, "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]" *Id.* at 1021.

Here, the first requisite of the *Garrison* test is met, as the ALJ improperly discounted plaintiff's subjective testimony and erroneously assessed the medical opinion of Dr. Parent. As to the second requisite, in determining whether the record is fully developed, the court looks to whether there are "*significant factual conflicts* in the record between [the claimant's] testimony and objective medical evidence." *Treichler*, 775 F.3d at 1104 (emphasis added).

The Commissioner asserts that plaintiff cannot meet the second requisite but fails to articulate any significant conflicts in the record. Although the opinions of non-examining physicians Dr. Dickey and Dr. Berner are inconsistent with the opinion of treating physician Dr. Parent, the opinions of non-examining physicians are insufficient to establish a significant factual conflict with the opinions of treating and examining physicians. *See Wesman v. Berryhill*, No. 6:16-cv-01222-JR, 2018 WL 1249921, at *11 (D. Or. Feb. 21, 2018), *report and recommendation adopted*, 2018 WL 1247866 (D. Or. Mar. 9, 2018) (finding the contradictory opinions of the non-examining doctors to be insufficient to create a significant factual conflict with the opinions of the treating physicians); *see also Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995) ("The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating

physician."). Moreover, the ALJ rejected the opinion of non-examining physician Dr. Berner and neither party has challenged that finding. Tr. 30. Accordingly, there are no significant factual conflicts in the record.

As to the third factor, if the discredited evidence were credited as true, the ALJ would be required to find plaintiff disabled. Dr. Parent determined that plaintiff's impairments would cause her to miss work three to four times per month and the VE testified that if plaintiff were to miss two or more days of work per month she would not be able to sustain employment. Tr. 74, 168. Additionally, Dr. Parent concluded that plaintiff could stand and walk for less than two hours per day, sit for less than two hours per day, and would need to lie down two or three times per day. Tr. 165-66. As such, the record demonstrates that plaintiff is unable to sustain work activities on a "regular and continuing basis." SSR 96-8p ("A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."). Therefore, plaintiff is disabled under the act.

Even when each of the credit as true factors is met, the record as a whole can leave "serious doubt as to whether the claimant is actually disabled" in "rare instances." *Revels*, 874 F.3d at 668 n.8 (citing *Garrison*, 759 F.3d at 1021). To establish the existence of serious doubt, the Commissioner may not merely repeat "the arguments she has already made." *Garrison*, 759 F.3d at 1022. The Commissioner argues that plaintiff's activities of daily living and her failure to seek treatment at a pain management clinic give rise to serious doubt. However, those arguments have been considered and rejected, as discussed above. The Commissioner does raise one new argument—that Dr. Parent opined plaintiff was disabled beginning in 2011, but plaintiff continued to work until 2013. Notably, however, the record reflects that plaintiff's decline in her ability to complete a full work day began in 2011 and continued to progressively worsen

throughout 2012 and 2013. Tr. 54, 311. Therefore, Dr. Parent's conclusion that plaintiff became disabled in August 2011 does not raise serious doubt. Moreover, the question before the court is whether plaintiff became disabled as of August 2013, and as discussed above, the record reflects that she did indeed become disabled at that point. As such, this case is not one of those "rare instances" where the court has serious doubt that plaintiff is disabled.

## CONCLUSION

For the reasons discussed above, the decision of the Commissioner is REVERSED and this matter is REMANDED for the immediate payment of benefits.

DATED October 22, 2018.

/s/ Youlee Yim You

Youlee Yim You
United States Magistrate Judge